HEISE INDUSTRIES, INC. *v.* LERMAN CONTAINER
CORPORATION ET AL.
(6896)

DUPONT, C. J., STOUGHTON and JACOBSON, Js.

Argued February 7—decision released May 2, 1989

*R. Bartley Halloran,* with whom, on the brief, was *Salvatore Bonanno,* for the appellant (named defendant).

*Dean B. Kilbourne,* with whom, on the brief, was *Karla A. Dalley,* for the appellee (plaintiff).

STOUGHTON, J. The named defendant appeals from the judgment rendered in favor of the plaintiff after a trial to the court. The sole issue is whether the trial court erred in awarding damages to the plaintiff, an unsecured creditor of an insolvent corporation the assets of which had been seized by a secured creditor. We find error.

The trial court found the following facts. The plaintiff, Heise Industries, Inc. (Heise Industries), is engaged in the business of manufacturing molds for making plastic bottles; Brooks B. Heise, Jr. (Heise), is its vice president. The named defendant, Lerman Container Corporation (Lerman Container), is a distributor of plastic bottles. Robert Lerman (Lerman) is a shareholder and principal in Lerman Container. Heise and Lerman agreed to form a corporation to be called Custom Bottles, Inc. (Custom Bottles), for the purpose of manufacturing plastic bottles. Heise Industries was to provide the mold equipment for Custom Bottles, while Lerman Container was to be its sole customer. Heise and Lerman each contributed $50,000 as a capital contribution to Custom Bottles and, in exchange, each received 50 percent of its stock. George Hurden served as president of Custom Bottles. The trial court found that Hurden was essentially a plant manager who had minimal knowledge of the corporate intrigue which came to surround him.

In November, 1984, Custom Bottles received an initial loan of $245,000 from Colonial Bank. The loan was guaranteed by Heise Industries and Lerman Container as well as by Heise and Lerman individually. In November, 1984, the two shareholders each lent Custom Bottles $40,000. The trial court found that there was no evidence to support a claim by Heise that he took a security interest for this loan. Custom Bottles later borrowed an additional $50,800 from Colonial Bank. Heise Industries supplied mold equipment to Custom Bottles but never received payment for this equipment.

Custom Bottles experienced financial difficulties from its beginning. When it became apparent that Heise and Lerman were deeply divided as to the resolution of the corporation's problems, Heise removed certain molds and mold equipment from the corporation's plant.[1]

Custom Bottles defaulted on the loan from Colonial Bank in the total amount of $306,000, including expenses and attorney's fees. Lerman Container paid the accelerated amount due and demanded that Custom Bottles transfer its assets to Lerman Container.[2]

---

[1] The court found that Heise removed molds and mold equipment late on a Sunday night without prior notice to Lerman or Hurden. The record further reveals that the equipment was removed on July 10, 1985, and consisted of a "chiller," a rosade machine, a workbench and a grinder. Heise represented to the Colonial Bank that this equipment was at all times owned by Heise Industries and that the items were delivered to Custom Bottles long after the financing agreement with Colonial Bank was concluded.

[2] The record reveals that on September 9, 1985, Heise's attorney wrote a letter to the attorneys for Colonial Bank advising them that Heise was interested in taking over the obligation of Custom Bottles. On or about September 17, 1985, Custom Bottles was in default on its payments to Colonial Bank, whereupon, Colonial Bank accelerated the loans and made demand on Custom Bottles for the outstanding debt balance. On or about October 8, 1985, Colonial Bank made a demand upon each of the four guarantors of the obligations of Custom Bottles for the payments of all the amounts due. On or about October 11, 1985, Lerman Container paid the full amount demanded by Colonial. The total amount paid was $300,991.93 of which $298,491.93 represented the amount of the loans.

Custom Bottles did so without notifying either Heise as a shareholder or its directors.

Lerman Container then sold the assets of Custom Bottles to a newly formed corporation, the defendant, Custom Bottles of Connecticut, Inc. (CBC). CBC was organized for the purpose of receiving the assets of Custom Bottles. These assets included the remaining but as yet unpaid for mold equipment.

On June 11, 1986, Heise Industries obtained a judgment against Custom Bottles in the amount of $113,286.20. The judgment was returned unsatisfied and Custom Bottles was later dissolved by court order. Heise Industries then brought suit against Lerman Container and CBC. This suit alleged, inter alia, the fraudulent transfer of assets between Custom Bottles and the defendants, Lerman Container and CBC. The plaintiff based its claim of fraudulent transfer on General Statutes § 52-552.[3]

"A conveyance is fraudulent if it is made with actual intent to avoid any debt or duty or if made without any substantial consideration by a person who is or will be thereby rendered insolvent." *Molitor* v. *Molitor,* 184 Conn. 530, 536, 440 A.2d 215 (1981). The determination as to whether a conveyance has been made with fraudulent intent is a question of fact. *Zapolsky* v. *Sacks,* 191 Conn. 194, 200, 464 A.2d 30 (1983). The plaintiff must prove fraud by a standard of "clear, precise and unequivocal" evidence. *Bound Brook Assn.* v. *Norwalk,* 198 Conn. 660, 666, 504 A.2d 1047, cert. denied, 479 U.S. 819, 107 S. Ct. 81, 93 L. Ed. 2d 36

---

[3] General Statutes § 52-552 provides: "FRAUDULENT CONVEYANCES, JUDGMENTS, CONTRACTS, WHEN VOID. All fraudulent conveyances, suits, judgments, executions or contracts, made or contrived with intent to avoid any debt or duty belonging to others, shall, notwithstanding any pretended consideration therefor, be void as against those persons only, their heirs, executors, administrators or assigns, to whom such debt or duty belongs.

(1986); *Patrocinio* v. *Yalanis,* 4 Conn. App. 33, 35–36, 492 A.2d 215 (1985). Fraud must often be inferred from the facts surrounding the conveyance. *Zapolsky* v. *Sacks,* supra; see *Wilcox* v. *Johnson,* 127 Conn. 539, 542, 18 A.2d 372 (1941). These inferences, or "badges of fraud"; see *Zapolsky* v. *Sacks,* supra; may arise from various circumstances, such as the relationship between the debtor and the transferee or the failing circumstances of the debtor at the time of the transfer. See *Maturo* v. *Gerard,* 196 Conn. 584, 590, 494 A.2d 1199 (1985); *Zapolsky* v. *Sacks,* supra; *Wilcox* v. *Johnson,* supra; *Patrocinio* v. *Yalanis,* supra, 37; see also *Travelers Indemnity Co.* v. *Rubin,* 209 Conn. 437, 449–50, 551 A.2d 1220 (1988) (*Covello, J.,* dissenting). Such inferences may also arise from the fact that the debtor retained possession of the property after the transfer; see *Zapolsky* v. *Sacks,* supra, 201; *Katz* v. *Richman,* 114 Conn. 165, 169, 158 A.2d 219 (1932); *Meade* v. *Smith,* 16 Conn. 346, 359 (1844).

The trial court found that Lerman, "formerly a 50 percent shareholder of Custom Bottles and currently a shareholder of CBC," had actual knowledge that Custom Bottles had never paid for the mold equipment. It concluded that the transfer of Custom Bottles' assets was, at least in part, designed to avoid the debt owed to Heise Industries, and that Heise Industries was entitled to recover the value of the equipment from the defendants. The court based this conclusion solely on the fact that Lerman was formerly a 50 percent shareholder of Custom Bottles as well as a shareholder in CBC, who had actual knowledge that the Custom Bottles had never paid Heise Industries for the mold equipment. The trial court rendered judgment against the defendants in the amount of $113,286.20, plus interest as set forth in the original judgment against Custom Bottles, together with costs. We do not agree that

there was sufficient evidence from which the trial court could reasonably and legally conclude that the transfer was fraudulent.

In the first place, there is no evidence that Lerman was a shareholder of CBC. In fact, the record reveals that although Lerman was a director of CBC, he owned no stock in the company. Secondly, although Lerman was a 50 percent shareholder of Custom Bottles and knew that Heise Industries had not been paid for the mold equipment, there is no evidence that the transfer of Custom Bottles' assets was fraudulent.

In this case, the record reveals that Colonial Bank, by virtue of its loan agreement, had a secured interest in all present and future assets of Custom Bottles. Since Heise Industries signed this agreement as guarantor, it cannot and does not deny the validity of the terms of that agreement. See General Statues § 42a-9-201.[4] Heise Industries has never alleged, either on appeal or in its original complaint, that it was a secured creditor. As a secured party, Colonial Bank had the right to take possession of Custom Bottles' assets if Custom Bottles defaulted on its loan payments. See General Statutes § 42a-9-503;[5] see also *Connecticut Bank & Trust Co.* v. *Incendy,* 207 Conn. 15, 21, 540 A.2d 32

[4] General Statutes § 42a-9-201 provides: "GENERAL VALIDITY OF SECURITY AGREEMENT. Except as otherwise provided by this title a security agreement is effective according to its terms between the parties, against purchasers of the collateral and against creditors. Nothing in this article validates any charge or practice illegal under any statute or regulation thereunder governing usury, small loans, retail instalment sales, or the like, or extends the application of any such statute or regulation to any transaction not otherwise subject thereto."

[5] General Statutes § 42a-9-503 provides:"SECURED PARTY'S RIGHT TO TAKE POSSESSION AFTER DEFAULT. Unless otherwise agreed a secured party has on default the right to take possession of the collateral. In taking possession a secured party may proceed without judicial process if this can be done without breach of the peace or may proceed by action. If the security agreement so provides the secured party may require the debtor to assemble the collateral and make it available to the secured party at the place

(1988); J. White & R. Summers, Uniform Commercial Code (2d Ed.) § 26-4. The bank could then have sold the assets without notice to Heise Industries. See General Statutes § 42a-9-504 (3)[6]; 9 R. Anderson, Uniform Commercial Code (3d Ed.) § 9-504:44. If Colonial Bank had exercised this right, it cannot be denied that Custom Bottles would have been bound under the agreement to allow its assets to be repossessed; see 9 R. Anderson, supra, § 9-504:24; and there would have been no fraudulent inference to be drawn.

We do not find that this analysis changes simply because it was Lerman Container, rather than Colonial Bank, which actually took possession of Custom Bottles' assets. As guarantor, Lerman Container, "stepped into the shoes" of Colonial Bank by paying off Custom Bottles' loans and became entitled thereby to all its rights under the loan agreement. See General Statutes

to be designated by the secured party which is reasonably convenient to both parties. Without removal a secured party may render equipment unusable, and may dispose of collateral on the debtor's premises under section 42a-9-504.''

[6] General Statutes § 42a-9-504 (3) provides: "Disposition of the collateral may be by public or private proceedings and may be made by way of one or more contracts. Sale or other disposition may be as a unit or in parcels and at any time and place and on any terms but every aspect of the disposition including the method, manner, time, place and terms must be commercially reasonable. Unless collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, reasonable notification of the time and place of any public sale or reasonable notification of the time after which any private sale or other intended disposition is to be made shall be sent by the secured party to the debtor, if he has not signed after default a statement renouncing or modifying his right to notification of sale. In the case of consumer goods no other notification need be sent. In other cases notification shall be sent to any other secured party from whom the secured party has received, before sending his notification to the debtor or before the debtor's renunciation of his rights, written notice of a claim of an interest in the collateral. The secured party may buy at any public sale and if the collateral is of a type customarily sold in a recognized market or is of a type which is the subject of widely distributed standard price quotations he may buy at private sale."

§§ 42a-9-504 (5)[7] and 42a-9-302 (2)[8]; see also *Ollag Construction Equipment Corporation* v. *Goldman,* 578 F. 2d 904, 908 (2d Cir. 1978); *In re Yale System, Inc.,* 362 F.2d 111, 114 (2d Cir. 1966); *Belcher* v. *Hartford Bank,* 15 Conn. 381, 384 (1843); Restatement, Security § 141.

Nor is there even a hint of fraud surrounding the manner in which Lerman Container became subrogated to the rights of Colonial Bank. Lerman Container paid full consideration for these rights by paying off the entire amount of the loans. This was an action forced upon Lerman Container by Colonial Bank and Lerman Container simply made the best of a bad situation. It should not be penalized for fulfilling its responsibilities as a guarantor and exercising its subrogation rights.

On the basis of the evidence presented, the trial court could not legally and reasonably have concluded that the conveyence was fraudulent. See *Bound Brook Assn.* v. *Norwalk,* supra; *Cutsumpas* v. *Connecticut Light & Power Co.,* 16 Conn. App. 108, 113–14, 546 A.2d 962 (1988).

There is error, the judgment is set aside and the case is remanded with direction to render judgment for the defendants.

In this opinion the other judges concurred.

---

[7] General Statutes § 42a-9-504 (5) provides: "A person who is liable to a secured party under a guaranty, endorsement, repurchase agreement or the like and who receives a transfer of collateral from the secured party or is subrogated to his rights has thereafter the rights and duties of the secured party. Such a transfer of collateral is not a sale or disposition of the collateral under this article."

[8] General Statutes § 42a-9-302 (2) provides: "If a secured party assigns a perfected security interest, no filing under this article is required in order to continue the perfected status of the security interest against creditors of and transferees from the original debtor."