[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTION TO DISMISS (#136)
I. FACTS
The following facts are alleged in the first count of the plaintiff's second amended complaint, #123. Prior to May of 1987, the plaintiff, Jackson, Lewis, Schnitzler Krupman, provided legal services to Al-Charles, Inc., d/b/a Harbor Crossing Skilled Nursing Facility ("Al-Charles").
On April 14, 1988, the plaintiff recovered a judgment against Al-Charles in the amount of $70,409.59, which remains unsatisfied.
On May 25, 1987, Albert Lizzi ("Lizzi") owned all the stock of Al-Charles. On this date, Lizzi sold all the stock of Al-Charles to Samuel Barnes ("Barnes"). The terms of the purchase and sales agreement provided that payments for the sale of stock would be made directly to Lizzi. Paragraph six of the purchase and sales agreement provided that Al-Charles would assign all right, title and interest to certain accounts receivable due from the State of Connecticut to Lizzi. On this date, Al-Charles was insolvent and unable to pay its obligations. Al-Charles' debt was due and owing to the plaintiff at this time.
The plaintiff alleges that payments to Lizzi were to the detriment of general creditors of Al-Charles such as the plaintiff, and were made by Barnes and accepted by Lizzi to defraud the creditors of Al-Charles or to prefer Lizzi to other creditors, including the plaintiff.
The plaintiff alleges that Al-Charles has made a claim against the State of Connecticut for the monies referred to in paragraph six of the purchase and sales agreement and that Barnes and Al-Charles have conveyed monies realized from the claim against the State of Connecticut to Lizzi.
In a second count, the plaintiff alleges that the above transaction constitutes an illegal distribution or dividend pursuant to General Statutes Sections 33-346 (a) and/or 33-357 (b). The plaintiff further alleges that Lizzi received such distribution or dividend knowing it to be improper and that Lizzi is therefore liable to the plaintiff pursuant to General Statutes Sec. 33-359.
In a third count, the plaintiff alleges that Lizzi, by virtue of his sole ownership and control of Al-Charles, should be held responsible for Al-Charles' failure to pay the plaintiff for legal services rendered. CT Page 3825
On December 17, 1990, the court, Hendel, J., granted Lizzi's motion to strike the second count.
Lizzi now moves to dismiss the first count of the complaint on the ground that the plaintiff lacks standing to assert the cause of action alleged therein.
II. DISCUSSION
"Practice Book Sec. 143 provides in relevant part: `The motion to dismiss shall be used to assert (1) lack of jurisdiction over the subject matter. . . .'" Southport Manor Convalescent Center, Inc. v. Foley, 216 Conn. 11,12 n. 1, 578 A.2d 646 (1990). "The motion to dismiss. . . `admits all facts well pleaded, invokes the existing record and must be decided upon that alone.'" Barde v. Board of Trustees, 207 Conn. 59, 62, 539 A.2d 1000 (1988). A claim that the plaintiff "lacks standing is a challenge to the subject matter jurisdiction of the trial court." Nationwide Mutual Ins. Co. v. Pasion, 219 Conn. 764, 767, 594 A.2d 468
(1991); Monroe v. Horwitch, 215 Conn. 469, 472,576 A.2d 1280 (1990).
 It is a basic principle of law that a plaintiff must have standing for the court to have jurisdiction. "`Standing is the legal right to set judicial machinery in motion. One cannot rightfully invoke the jurisdiction of the court unless he has, in an individual or representative capacity, some real interest in the cause of action, or a legal or equitable right, title or interest in the subject matter of the controversy.'" Ardmare Construction Co. v. Freedman, 191 Conn. 497, 501, 467 A.2d 674 (1983), quoting Hiland v. Ives, 28 Conn. Sup. 243, 245, 257 A.2d 822 (1966). "Standing is not a technical rule intended to keep aggrieved parties out of court; nor is it a test of substantial rights. Rather it is a practical concept designed to insure that courts and parties are not vexed by suits brought to vindicate nonjusticiable interests and that judicial decisions which may affect the rights of others are forged in hot controversy, with each view fairly and vigorously CT Page 3826 represented. . . . These two objectives are ordinarily held to have been met when a complainant makes a colorable claim of direct injury he has suffered or is likely to suffer, in an individual or representative capacity. Such a `personal stake in the outcome of the controversy'; Shaskan v. Waltham Industries Corporation, 168 Conn. 43, 49, 357 A.2d 472 (1975). . . provides the requisite assurance of `concrete adverseness' and diligent advocacy." (Citations omitted in part.) Maloney v. Pac, 183 Conn. 313, 320-21, 439 A.2d 349 (1981).
Unisys Corporation v. Department of Labor, 220 Conn. 689,693, 600 A.2d 1019 (1991).
The defendant argues that an unsecured creditor of an insolvent corporation may not directly recover the proceeds of a preferential transfer from the insolvent corporation to another unsecured creditor because to do so would merely result in a preference being given to one unsecured creditor rather than another. The defendant argues that under the "trust fund doctrine" any preferential transfers by an insolvent corporation must be set aside by a receiver for the benefit of all unsecured creditors of the insolvent corporation. The defendant has not cited, nor has research revealed any Connecticut authority for his argument.
The plaintiff has alleged that it is a creditor of Al-Charles and that, pursuant to a sale of the stock of Al-Charles, the sole shareholder of Al-Charles retained for himself a valuable account receivable and that such retention constitutes a fraudulent or preferential transfer and was detrimental to all creditors of Al-Charles, including the plaintiff.
It is well-settled in Connecticut that a creditor of a solvent or insolvent corporation may recover damages caused by a fraudulent transfer committed by the debtor corporation from both the transferor and transferee. Genovese Coal Co. v. River Bend Builders, Inc., 146 Conn. 48,50, 147 A.2d 193 (1956); Heise Industries, Inc. v. Lerman Container Corporation, 18 Conn. App. 265, 268-69,557 A.2d 564 (1989); Klopp v. Thermal-Sash, Inc., 13 Conn. App. 87,88-90, 537 A.2d 907 (1987); see also General Statutes Sec. 52-552 (repealed by Conn. Pub. Acts No. 91-297 (1991), effective October 1, 1991 (entitled "An Act Adopting the CT Page 3827 Uniform Fraudulent Transfer Act")). In the Klopp case, for example, two judgment creditors of a failed corporation recovered damages from the president and shareholder of the corporation on the basis of a fraudulent or preferential transfer of the assets of the corporation. Klopp v. Thermal-Sash, Inc., supra, 88-89. Furthermore, the plaintiffs in the Klopp case were the creditors themselves and not a receiver. Id., 88; see also Bongiovanni v. Gozzo, 37 Conn. Sup. 648,433 A.2d 1014 (App. Sess. 1981).
It is decided that the plaintiff has made "a colorable claim of direct injury he has suffered or is likely to suffer, in an individual or representative capacity.
III. CONCLUSION
For the reasons herein stated it is concluded that the motion to dismiss ought to be and is hereby denied because the plaintiff has standing to bring the cause of action alleged in the first count of its second amended complaint.
ARENA, JUDGE