**FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver of Citytrust**

v.

**Ellin J. ISBAN and Elliot Isban.**

**Civ. Nos. 5:91CV519(EBB), 5:92CV318(EBB).**

United States District Court, D. Connecticut.

Nov. 10, 1994.

Scott M. Harrington, Kent M. Krudys, Scott S. Centrella, Richard E. Castiglioni, Geoffrey K. Milne, Diserio, Martin, O'Connor & Castiglioni, Stamford, CT, Karla A. Dalley, Gerald L. Garlick, David G. Chabot, Leventhal, Krasow & Roos, P.C., Hartford, CT, Alan I. Saltzman, Kantrovitz & Brownstein, P.C., New Haven, CT, for plaintiff.

Richard L. Goldblatt, Robert L. Sweeney, Jr., Goldblatt & Greenstein, Hamden, CT, for Elliot Isban.

Robert L. Sweeney, Jr., Goldblatt & Greenstein, Hamden, CT, for Ellin Isban.

ELLEN B. BURNS, Senior District Judge.

Absent objection and after review, the ruling of the Magistrate Judge is approved and So Ordered.

## RECOMMENDED RULING ON MOTION FOR DISCHARGE OF NOTICE OF LIS PENDENS AND DISSOLUTION OF ATTACHMENT

EAGAN, United States Magistrate Judge.

The plaintiff, the Federal Deposit Insurance Corporation, as Receiver of Citytrust (hereinafter "FDIC"), has brought this fraudulent conveyance action against defendants Ellin J. Isban and her husband, Elliot Isban. Simultaneously with the filing of their complaint, the FDIC recorded a notice of lis pendens and certificate of attachment on the Isban's real property in Stamford, Connecticut. The defendants have asked the Court to discharge the notice of lis pendens and to dissolve the attachment on their property. On November 18, 1992, February 12, 1993, and June 16, 1993, the Court conducted a hearing on the defendants' motion. For the reasons set forth below, the defendants' request for discharge of the notice of lis pendens is DENIED and their request for dissolution of the attachment is GRANTED.

### I. Background

On August 9, 1991, the FDIC, acting in its capacity as receiver pursuant to 12 U.S.C. § 1821, took possession of the assets of Citytrust. Accordingly, the FDIC is now the holder of the notes, guaranties and mortgages which are the subject of this suit.

For the purpose of deciding this motion, the defendants do not dispute most of the allegations set forth in the plaintiff's complaint. See Defendants' Proposed Findings of Fact and Conclusions of Law (filed September 8, 1993) at 3; see also Complaint (filed June 3, 1992). Upon examination of the submissions of the parties, and after the aforementioned hearing on the pending motion, the Court finds the following.

PPS Associates (hereinafter "PPS") is a general partnership existing under the laws of the State of Connecticut. The general partners of PPS are Genaro A. Porricelli, Gerald J. Porricelli and Jack S. Scherban. The FDIC also alleges that defendant Elliot Isban is a general partner of PPS. Mr. Isban denies that he is a general partner of PPS; however, he admits that he is obligated to pay certain obligations of PPS in his capacity as a guarantor.

On August 7, 1987, PPS borrowed $625,000 from Citytrust and executed a demand promissory note wherein it agreed to pay interest on any unpaid principal balance commencing September 1, 1987 and each month thereafter, and to repay the entire principal balance upon demand. The note also provides, *inter alia,* that

THE MAKER AND EACH ENDORSER, GUARANTOR OR SURETY OF THIS NOTE ACKNOWLEDGE THAT THE LOAN EVIDENCED BY THIS NOTE IS A COMMERCIAL TRANSACTION, AND EACH HEREBY SPECIFICALLY WAIVES HIS RIGHTS TO NOTICE AND TO A HEARING UNDER CHAPTER 903A OF THE CONNECTICUT GENERAL STATUTES, AS AMENDED, WITH RESPECT TO ANY PREJUDGMENT REMEDY AS DEFINED THEREIN.

On December 16, 1987, Elliot Isban executed a guaranty by which he guaranteed the punctual payment at maturity of all present and future loan advances made by Citytrust to PPS up to the aggregate principal sum of $650,000, plus interest and costs of collection thereon. On December 19, 1987, PPS borrowed an additional $25,000 from Citytrust. On June 29, 1988, PPS borrowed an additional $70,000 from Citytrust. Simultaneously with the execution and delivery of the $70,000 promissory note, Elliot Isban executed an additional guaranty wherein he guaranteed punctual payment at maturity of all present and future loan advances made by Citytrust to PPS up to an aggregate principal sum of $70,000.

On February 21, 1990, Citytrust and PPS restructured their loan agreement. PPS executed three note modification agreements

which modified the terms of the aforementioned notes in that PPS agreed to repay its indebtedness to Citytrust in monthly installments of principal and interest on all total unpaid principal balances commencing March 1, 1990 and each month thereafter until February 21, 1993, when any remaining principal and interest balances would be due and payable in full. Simultaneously, Elliot Isban consented to the note modification agreements and agreed to continue to be bound by the aforementioned guaranties of the indebtedness of PPS.

At the time of the restructuring, Mr. Isban was aware that Jack Scherban was experiencing financial difficulties. Isban also knew that condominiums in the Porricellis' multimillion dollar New Haven project were not selling. Nevertheless, he claims to have believed that the Porricellis were financially sound.

Also on February 21, 1990, Ellin J. Isban executed a limited guaranty wherein she unconditionally guaranteed the punctual payment at maturity of all present and future loan advances from Citytrust to PPS up to an aggregate principal balance of $24,000, plus interest and costs of collection thereon. The limited guaranty does not contain a waiver of rights provision similar to the one found in the August 7, 1987 note. By virtue of this guaranty, Ellin Isban is liable for repayment of PPS' restructured indebtedness up to the aggregate principal amount of $24,000.

To secure their indebtedness to Citytrust, Elliot and Ellin Isban conveyed to Citytrust an interest in real property that they owned located at 161 Mill Road in Stamford, Connecticut. From December 15, 1976 until November 14, 1990, the defendants were joint owners of the Mill Road property. However, several months after tendering the Mill Road property as security for a portion of the restructured loans, on November 14, 1990, Elliot Isban quitclaimed and transferred his interest to his wife for stated consideration of "ONE ($1.00) AND OTHER GOOD AND VALUABLE CONSIDERATION." One of the witnesses on the deed was Jack Scherban. The testimony indicates that it is questionable whether any consideration passed during the transfer. At the time of the transfer, Ellin Isban knew that her husband was indebted to Citytrust.

Pursuant to a sworn financial statement provided to Citytrust in January, 1988, the Isbans were obliged to notify the bank of any substantial change in their financial condition. Despite that fact, they failed to disclose the transfer of the property to Citytrust.

The Isbans claim that the transfer of the Mr. Isban's interest in the Mill Road property was conducted solely as an estate planning device. Moreover, they claim that, at the time of the transfer, Elliot Isban had sufficient other assets to satisfy their indebtedness to cover the nonsecured portion of the financing. However, the Isbans took no other substantial actions to effectuate their asserted estate plan. Moreover, financial statements which Mr. Isban provided to two other Connecticut banks in 1990 showed that Mr. Isban overestimated his own income and that of his company, Lightech Industries, Inc. Finally, the timing of the conveyance suggests that it was made to protect the Isban's assets from potential claims by creditors.

From February through December, 1990, the PPS loans were consistently 30 or more days past due. The Citytrust account officer on the PPS loans sent Elliot Isban copies of several letters to Jack Scherban regarding the past due status of the PPS notes, including letters mailed in April, May and September, 1990. On occasion, the account officer also spoke with Mr. Isban regarding restructuring the loans and advising him of the status of the loans.

After October 30, 1990, Citytrust received no further payments on the three PPS notes. The outstanding principal balances on the three notes as of that date were $622,509.18, $69,728.00 and $24,888.53. By December, 1990, PPS had insufficient assets to satisfy its indebtedness to Citytrust.

On June 3, 1992, the FDIC filed a complaint claiming, *inter alia*, that the Isban's transfer of the Mill Road property constitutes a fraudulent conveyance in that it was designed to deprive Elliot Isban of sufficient means to satisfy his indebtedness to City-

trust. In addition, the FDIC filed a notice of lis pendens and a certificate of attachment against the property, which the defendants claim are procedurally flawed and otherwise not supported by probable cause.

## II. Discussion

### A. Probable Cause

■ "A conveyance is fraudulent if made with actual intent to avoid any debt or duty or if made without any substantial consideration by a person who is or will be thereby rendered insolvent." *Molitor v. Molitor*, 184 Conn. 530, 536, 440 A.2d 215 (1981). A party which seeks to set aside a conveyance as fraudulent must prove either (i) that the conveyance was made without substantial consideration and rendered the transferor unable to meet his financial obligations or (ii) that the conveyance was made with a fraudulent intent in which the grantee participated. *See, e.g., Tyers v. Coma*, 214 Conn. 8, 11, 570 A.2d 186 (1990). However, "insolvency is not a necessary element of a fraudulent conveyance under Connecticut law if the second alternative is proved; rather, a conveyance is fraudulent if motivated by a desire to circumvent any debt or duty." *Rocklen, Inc. v. Radulesco*, 10 Conn.App. 271, 278, 522 A.2d 846 (1987); *accord In re Martin–Trigona*, 763 F.2d 503, 506 (1985).

■ The ultimate determination of whether a conveyance has been made with fraudulent intent is a question of fact which must be proved by "clear, precise and unequivocal" evidence. *See Heise Industries, Inc. v. Lerman Container Corp.*, 18 Conn. App. 265, 268, 557 A.2d 564 (1989) (citations omitted). By contrast, to sustain the validity of the FDIC's lis pendens and attachment, this Court at this time need only find probable cause to believe that the transfer was fraudulent. *See* Conn.Gen.Stat. §§ 52–278d(a); 52–278e(c); 52–325b(a). "Probable cause" is "a *bona fide* belief in the existence of the facts essential under the law for the action and such as would warrant a man of ordinary caution, prudence and judgment, under the circumstances, in entertaining it." *Three S. Development Co. v. Santore*, 193 Conn. 174, 175, 474 A.2d 795 (1984) (citations omitted). It is a common sense standard

that does not demand that the belief be correct, or even that it is more likely true than false. *Goodwin v. Pratt*, 10 Conn.App. 618, 621, 524 A.2d 1168 (1987). Accordingly, the FDIC does not have to prove that it will prevail, only that there is probable cause to sustain the validity of its claim that the Isbans' conveyance was fraudulent. *Id.* The Court finds that the FDIC has demonstrated probable cause.

■ "A husband has an undisputed right to transfer property to his wife without adequate consideration so long as he is not thereby disabled from paying his obligations and the transfer is not made with the fraudulent intent of concealing the property from his creditors or of avoiding their claims." *Skinner v. Skinner*, 154 Conn. 107, 109, 221 A.2d 848 (1966). Thus, the question becomes whether there is probable cause to believe that the Isbans' transfer was motivated by an intent to conceal their property from creditors or to avoid their creditors' claims.

Under these circumstances, there is probable cause to believe that the transfer of the Mill Road property was fraudulent. It was made at a time when the defendants knew of Mr. Isban's existing debts to Citytrust. It was made without apparent substantial consideration. It arguably rendered Mr. Isban insolvent in that his apparent debts were in excess of his assets. In any event, the transaction tended to make it more difficult for present or future creditors to collect on debts incurred by Mr. Isban. It was done secretly in that the transfer was not disclosed to Citytrust, or to several other creditors of the Isbans. Moreover, the Isban's testimony leaves questions about the genuineness of their assertion that the transfer was made solely as an estate planning tool. As a result of the transfer, Citytrust's interest in the Mill Road property was impaired. *Cf. Molitor*, 184 Conn. at 536–37, 440 A.2d 215; *Sanstrom v. Strickland*, 11 Conn.App. 211, 525 A.2d 989 (1987). These factors provide probable cause to believe that the transfer of the Mill Road property was fraudulent.

### B. Lis Pendens

■ Defendants argue that this Court should discharge the notice of lis pendens

because it constitutes an improper substitute for an attachment against the Mill Road property. Under Conn.Gen.Stat. § 52–325(a), a lis pendens may be filed "if the action is intended to affect real property. . . ." Actions "intended to affect real property" include "actions whose object and purpose is to establish or enforce previously acquired interests in real property" and "actions which may affect in any manner the title to or interest in real property, notwithstanding the main purpose of the action may be other than to affect the title of such real property." Conn.Gen.Stat. § 52–325(b)(2), (3). Connecticut courts have interpreted § 52–325(b)(3)'s language as requiring the denial of motions to discharge a lis pendens where the courts' disposition of the main cause of action could affect in some manner an interest in property. *See Garcia v. Brooks Street Associates,* 209 Conn. 15, 546 A.2d 275 (1988); *Stratton v. Ward,* 39 Conn. Supp. 195, 197–98, 474 A.2d 113 (1983). The FDIC's fraudulent conveyance action is designed to enforce its interest in the Mill Road property as a result of the Isbans' guarantees. This interest is sufficient to support the filing of a lis pendens.

### C. Attachment

■ The defendants contend that the FDIC's attachment should be dissolved because the FDIC failed to include in its service the requisite notice under Conn.Gen. Stat. § 52–278e(b). Sections 52–278e(b) and 52–278f(3) require a plaintiff who has obtained a prejudgment remedy to include a notice specifying the defendant's right to a hearing. The FDIC does not dispute that it failed to provide the required notice. Rather, it argues that the statutory notice is simply a "technical procedural requirement" which a court may overlook where, as here, the defendant subsequently has been afford-ed a hearing on the issue of probable cause. *See* FDIC's Proposed Findings of Fact and Conclusions of Law (filed September 7, 1993) at 35.

The Court must reject this argument. As an initial observation, the Court notes that neither defendant was a signatory on the August 7, 1987 note and that only Mr. Isban was a guarantor on the original note which contained the commercial waiver provision. In addition, Mrs. Isban did not execute her limited guaranty until after the restructuring of the loans. Therefore, it is questionable whether either defendant can be said to have unequivocally waived their notice rights pursuant to the waiver provision in the August 7, 1987 note. In any event, the remedy of attaching and securing a defendant's property is unknown to common law and is founded on and regulated by statute. *See E.J. Hansen Elevator, Inc. v. Stoll,* 167 Conn. 623, 628, 356 A.2d 893 (1975). Accordingly, a party seeking an attachment must comply with the requirements of the statute. *See Ledgebrook Condominium Association, Inc. v. Lusk Corp.,* 172 Conn. 577, 582, 376 A.2d 60 (1977).

In relevant part, Conn.Gen.Stat. § 52–278b provides that "no prejudgment remedy shall be available to a person in any action at law or equity (1) unless he has complied with the provisions of sections 52–278a to 52–278g, inclusive, except an action upon a commercial transaction wherein the defendant has executed a waiver as provided in section 52–278f. . . ." However, § 52–278f(3) now requires a plaintiff to include a notice satisfying the requirements of § 52–278e(b), even where a defendant has waived his right to notice and a hearing.[1] Thus, "[a]n ex parte prejudgment attachment made pursuant to General Statutes § 52–278f *must* include in the process served on the defendant a notice

---

1. Section 2 of Public Act No. 91–315, which took effect on July 1, 1991, provides as follows:

    In an action upon a commercial transaction, as defined in section 52–278a, wherein the defendant has waived his right to a notice and hearing under sections 52–278a to 52–278g, inclusive, the attorney for the plaintiff shall issue the writ for a prejudgment remedy without securing a court order provided that (1) the complaint shall set forth a copy of the waiver; (2) the plaintiff shall file an affidavit sworn to by the plaintiff or any competent affiant setting forth a statement of facts sufficient to show that there is probable cause to sustain the validity of the plaintiff's claim; and (3) the plaintiff shall include in the process served on the defendant a notice satisfying the requirements of subsection (b) of section 52–278e, as amended by section 1 of this act. (new language underlined).

that the defendant has a right to a hearing to object to the attachment for lack of probable cause to sustain the claim, or to request that the remedy be modified, vacated or dismissed or to claim the property attached is exempt from execution." *People's Bank v. Bilmor Building Corp.*, 28 Conn.App. 809, 811 n. 4, 614 A.2d 456 (1992) (emphasis added).

Notification of the opportunity for a post-attachment hearing is more than a formality; it is part of the due process safeguards which ordinarily must be afforded a defendant. *See Connecticut v. Doehr*, 501 U.S. 1, 21–22, 111 S.Ct. 2105, 2118, 115 L.Ed.2d 1 (1991) ("Our cases have repeatedly emphasized the importance of providing a prompt postdeprivation hearing at the very least.") Accordingly, the FDIC's entitlement to a prejudgment attachment is premised upon its compliance with all statutory requirements, including the notice requirement.

The Court has not uncovered any case which directly addresses the effect of the failure to serve the notice required under Conn.Gen.Stat. § 52–278f(3). In *Branford Savings Bank v. Pelliccio*, 1992 WL 38344 (February 19, 1992), Superior Court Judge Hodgson noted that the failure of the plaintiff to provide a notice waived by the defendant did not provide a reason to dissolve the attachment at issue. However, Judge Hodgson also noted that "[t]he defendant has not cited any reason or invoked any case law preventing the waiver of the provisions of § 52–278a–g from being given effect ..." and otherwise did not apparently consider the 1991 statutory amendment expressed in § 52–278f(3) that a plaintiff who obtains a prejudgment attachment where the defendant has waived a notice and hearing must nevertheless provide a notice in the process served which satisfies § 52–278e(b). Given the clear statutory directives and the importance of prompt notice of the opportunity to be heard, the Court finds that the FDIC's prejudgment attachment must be dissolved for failure to comply with Conn.Gen.Stat. § 52–278f(3). *Cf. Lauf v. James*, 33 Conn. App. 223, 635 A.2d 300 (1993) (A defendant is not entitled to a prejudgment remedy where she failed to submit a properly executed affidavit pursuant to Conn.Gen.Stat. § 52–278c(a)(2) along with her application.)

### III. Conclusion

The defendants' Motion For Discharge of the Notice of Lis Pendens is DENIED. The defendants' Motion For Dissolution of Attachment is GRANTED without prejudice to the plaintiff's right to refile upon compliance with all statutory requirements.

Any objections to this report and recommendation must be filed with the Clerk of Courts within ten (10) days of the receipt of this recommended ruling. Failure to object to this report and recommendation within ten (10) days will preclude appellate review. *See* 28 U.S.C. § 636(b)(1); Rules 72, 6(a) and 6(e) of the Federal Rules of Civil Procedure; Rule 2 of the Local Rules for United States Magistrates; *Small v. Secretary of HHS*, 892 F.2d 15, 16 (2d Cir.1989).

Dated at Hartford, Connecticut, this 19th day of January, 1994.