[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
Memorandum Filed June 18, 1997
This action is brought for the foreclosure of two mortgages (the "Mortgages") on two properties, one known as 1750 Highland Avenue and the second one Old Spring Street in Waterbury, (the "Properties"). The plaintiff Jo Fidanza seeks to foreclose her mortgage on a one-third interest in the Properties and the plaintiff Marie Fidanza seeks to foreclose her mortgage on a different one-third interest in the Properties. The owner of the equity as to both interests is the defendant TDB International, LLC ("TDB"). TDB acquired its two-thirds interest in the Properties subject to the plaintiffs' mortgages.
TDB contests the plaintiffs' attempted foreclosure and filed twelve special defenses. Ten special defenses were withdrawn on the first day of trial, leaving only the first special defense and the tenth special defense.
The plaintiffs first seek to attack the two remaining special defenses facially and not on the merits. In response to TDB's first special defense, which alleges that the Mortgages constituted a "concealed fraudulent transfer," the plaintiffs contend that the special defense is barred by the statute of limitations, General Statutes § 52-577. That statute provides "[N]o action shall be brought but within three years from the date of the fact or omission complained of." By its express terms CT Page 6328 the statute of limitations applies to the bringing of an "action." The defendant TDB has not brought an "action;" it has asserted as a defense to foreclosure that the Mortgages cannot be foreclosed because they are void as fraudulent transfers. The plaintiffs have not cited any case where the statute of limitations was found to bar the raising of a special defense. InSt. Mary's Hospital v. Torres, 33 Conn. Sup. 201 (1976), the court addressed whether the applicable statute of limitations barred a defensive recoupment claim which sought an award of damages. The defendant TDB, however, has not filed a recoupment claim and does not seek any affirmative relief. TDB does not seek judgment setting aside the Mortgages; it simply seeks to bar the foreclosure of the Mortgages. The court finds that the statute of limitations does not bar such a special defense.
TDB's tenth special defense reads, "The alleged mortgages are invalid as they fail to state the true nature of the transaction in that the mortgages were given to allegedly repay an equity loan taken by each of the plaintiffs." This special defense was first filed on January 16, 1996. The plaintiff replied to this special defense on March 21, 1996. On October 3, 1996, the first day of trial, the plaintiffs filed a memorandum of law which moved the court to strike the tenth special defense on the grounds that it alleges a legal conclusion without supporting factual allegations. The claim to strike the tenth special defense must be denied, however, as untimely in that the plaintiffs replied to the special defense prior to seeking to strike it. Practice Book § 112 provides that a motion to strike the answer must be filed before a reply to the special defenses. Practice Book § 113 provides that the filing of a pleading is a waiver of the right to file any pleading which precedes it in the order of pleading as set forth in Practice Book § 112. The plaintiffs' reply to the tenth special defense therefore waived a motion to strike that special defense. The claim to strike the tenth special defense is therefore denied. Both special defenses will therefore be addressed on the merits.
The disputed issues in this action, consisting of the special defenses and the amount of the plaintiffs' debts, were tried to the court. The court finds the facts as hereafter set forth. The plaintiff Jo Fidanza is married to Julio C. Fidanza. The plaintiff Marie Fidanza is married to August L. Fidanza. Julio and August are brothers. Together with a third brother, they have operated for many years a construction business known as Fidanza Brothers, CT Page 6329 a general partnership. The office of Fidanza Brothers is located at 1270 Highland Avenue, which is one of the Properties subject to the Mortgages, which the plaintiffs seek to foreclose. In April 1990 each couple (Jo and Julio Fidanza and Marie and August Fidanza) obtained a home equity line of credit at Heritage Bank in the amount of $100,000. The line of credit was secured in each case by a mortgage on the home of the couple. The house in each case was solely in the name of the wife/plaintiff. After the lines of credit were procured, Julio and August drew checks on the credit lines and made them payable to Fidanza Brothers in order to advance cash into the business. They made advances to Fidanza Brothers until the credit lines were exhausted. Interest was due monthly to Heritage Bank on the credit lines and was paid by the couples. Fidanza Brothers generally paid interest monthly to both couples in an amount equal to the interest payable to Heritage. Fidanza Brothers never made any payments against the principal which had been advanced from the credit lines.
In January, 1991 Julio and August consulted an attorney who drafted the Mortgages, which the plaintiffs now seek to foreclose. The attorney also drafted the promissory notes and personal guaranties which are attached to the Mortgages. Julio mortgaged his one-third interest in the Properties to his wife, Jo, to secure his written guaranty of her loan of $95,000 (through the home equity line of credit) to Fidanza Brothers. The loan was evidenced by a promissory note for $95,000 dated August 15, 1990 from Fidanza Brothers to Jo. August mortgaged his one-third interest in the Properties to his wife, Marie, to secure his written guaranty of her loan of $100,000 (through the home equity line of credit) to Fidanza Brothers. The loan was evidenced by a promissory note for $100,000 dated April 23, 1990 from Fidanza Brothers to Marie. The attorney drafted all these documents in January, 1991 and recorded them in the Waterbury Land Records in February, 1991. Neither of the plaintiffs was present for the execution of the documents. The attorney did not speak with either plaintiff; Julio was the source of the information provided to the attorney and was the person who directed the attorney to prepare the Mortgages and the other documents.
In October, 1992, Clarence DiBlasi, a creditor of Julio and August, recorded a judgment lien in the amount of $726,567.04 against the interests of Julio and August in the Highland Avenue property. DiBlasi later took title to the Properties subject to the Mortgages in order to settle another fraudulent conveyance CT Page 6330 claim that he made against August and Julio Fidanza relating to a later conveyance by Julio and August Fidanza of different properties to their respective wives. DiBlasi then transferred title to the properties to TDB, a corporation owned by his wife and sons.
TDB alleges in its first special defense that the Mortgages constitute "a concealed fraudulent transfer." The parties agree that this issue must be decided with reference to General Statutes § 52-552, which is now repealed but was in effect at the time the Mortgages were conveyed. The law in effect at the time of the conveyance is the applicable law. Tyler v. Schnabel,34 Conn. App. 216, 220 (1994).
Section 52-552 provides that "[a]ll fraudulent conveyances, suits, judgments, executions or contracts, made or contrived with intent to avoid any debt or duty belonging to others, shall notwithstanding any pretended consideration therefor, be void as against those persons only, their heirs, executors, administrators or assigns, to whom such debt or duty belongs." The statute is an adoption of the common law of fraudulent conveyances. Molitor v. Molitor, 184 Conn. 530, 535 (1981). Despite its wording, two types of fraudulent conveyances are recognized under the statute: an actual fraudulent conveyance and a constructive fraudulent conveyance. A conveyance made without substantial consideration which renders the transferor insolvent or unable to meet his obligations is a constructive fraudulent conveyance. Tyers v. Coma, 214 Conn. 8, 11 (1990). An actual fraudulent conveyance is a conveyance made with a fraudulent intent in which the grantee participated. Id. Fraud must be proved by clear, precise and unequivocal evidence, a higher burden of proof than the usual civil standard of a fair preponderance of the evidence. Id. The higher standard of proof applies to both types of fraudulent conveyance, actual or constructive. Tessitore v. Tessitore, 31 Conn. App. 40, 43
(1993).
The determination as to whether a conveyance was fraudulent is a question of fact. Heise Industries, Inc. v. Lerman ContainerCorp., 18 Conn. App. 265, 268 (1989). Fraud often must be inferred from the facts surrounding a conveyance. Id. The facts in this case are not sufficient to establish fraudulent conveyance by clear, precise and unequivocal evidence.
A constructive fraudulent conveyance depends on evidence of CT Page 6331 two factors: (1) a conveyance without substantial consideration which (2) renders the transfer insolvent or unable to meet his or her obligations. Tyers v. Coma, supra, 214 Conn. 11. A transfer made to satisfy an antecedent debt can be found to rest on valid and substantial consideration. Id., 12. In Tyers v. Coma, a husband transferred to his wife his one-half interest in their home. He testified that he made the transfer in satisfaction of a loan he owed to his wife. The Supreme Court upheld the trial court's acceptance of the husband's testimony and its finding that there was good consideration for the deed. Id. Valid pre-existing debts have been found to constitute valuable consideration in other cases as well. Katz v. Richman,114 Conn. 165, 170 (1932); Warner Glove Co. v. Jennings, 58 Conn. 74, 82
(1889).
In this case, the conveyance of the Mortgages to the plaintiffs was made for substantial and valid consideration — to secure the loan advances procured through the home equity lines of credit. Although there is a dispute between the parties as to the actual amount of the debts secured by the Mortgages, it is not disputed that substantial amounts of principal were advanced to Fidanza Brothers through these lines of credit and were not re-paid. The court cannot find constructive fraudulent conveyances where the conveyances were supported by substantial consideration.
Two elements are also required for an actual fraudulent conveyance: (1) a conveyance made with actual fraudulent intent (2) in which the grantee participated. Tyers v. Coma, supra,214 Conn. 11. Assuming, for the moment, that there was clear, precise and unequivocal evidence of a fraudulent intent on the part of Julio and August Fidanza, TDB must further show by clear, precise and unequivocal evidence that Jo and Marie Fidanza, the mortgagees, participated in that actual fraudulent intent. Such evidence was not presented.
There was no evidence at trial, either direct or by inference, that Jo and Marie Fidanza participated in any way in any fraud in connection with the Mortgages. At the time of the mortgage conveyances, neither was employed at Fidanza Brothers and neither had any but a vague understanding of the finances of Fidanza Brothers or of their respective husbands. The court found the testimony of both women to be plausible and credible. Each wanted her loan to be repaid as soon as possible; each knew that the principal was not being paid; and each was aware some months CT Page 6332 after the advances were made that her loan was going to be secured by a mortgage on her husband's one-third interest in the Properties. Their husbands, however, initiated the concept of securing the loans with mortgages and took the steps necessary to have the Mortgages drafted and recorded. There was no evidence that either of the plaintiffs knew anything about any creditors of her husband, including Clarence DiBlasi.
TDB argues that each of the two loans should be considered as a loan from both husband and wife rather than just the wife. However, the evidence was clear and consistent that the loans were always considered to be loans from the plaintiffs because title to the homes which are mortgaged to Heritage Bank to secure repayment of the lines of credit is in the name of the plaintiffs and has been for many years. If the bank is not repaid, it is the property of the plaintiffs which is at risk. Because the credit lines are secured by mortgages on property owned solely by the plaintiffs, it is logical to regard the loans as loans made solely by the plaintiffs.
TDB failed to show by clear, precise and unequivocal evidence that the plaintiffs knowingly participated in the fraudulent conveyance of the Mortgages. The court therefore finds for the plaintiffs on TDB's first special defense.
In its tenth special defense TDB alleges that the Mortgages "fail to state the true nature of the transaction in that the mortgages were given to allegedly repay an equity loan taken by each of the plaintiffs." Connecticut law requires that a mortgage deed must provide "reasonable notice" of the obligation which is secured by the mortgage. Dart Bogue Co. v. Slosberg,202 Conn. 566, 578 (1987). "The purpose of the notice requirement is to prevent subsequent third parties from being defrauded or otherwise misled by inaccuracies and omissions in the record that conceal the true nature of the secured obligation . . . It is not necessary, however, that a mortgage recite with particularity all of the details of the underlying transaction." Id., 578-79. "Reasonable notice" requires at least that the nature of the debt secured be disclosed, i.e., "whether the debt is absolute or contingent, liquidated or unliquidated, or whether it is given to secure an existing liability or future advances . . . The `amount' of the debt is the dollar value of the obligation secured, to the extent it can be ascertained at the time the mortgage is executed." Id. CT Page 6333
TDB alleged only one specified deficiency in the tenth special defense — that the Mortgages failed to state that they "were given to allegedly repay an equity loan taken by each of the plaintiffs." TDB failed to brief this alleged deficiency in its several memoranda of law and it is therefore deemed abandoned. Collins v. Goldberg, 28 Conn. App. 733, 738 (1992).
Even if it were not abandoned, however, the court is not persuaded of the merit of TDB's claim. TDB fails to offer any reason why it should be necessary for the Mortgages to recite that that they are given to repay equity loans taken by the plaintiffs. As of the date the Mortgages were executed, all of the funds drawn on the home equity credit lines were advanced. There were no repayments and readvances and therefore no reason the Mortgages should refer to the home equity loans. A mortgage is not required to set forth all the many details of the underlying loan transaction. Id.
The Mortgages accurately state the nature of the debts secured. Attached to each mortgage is a full copy of the promissory note from Fidanza Brothers to the plaintiffs for the stated principal amount, $100,000 in the case of Marie Fidanza's mortgage and $95,000 in the case of Jo Fidanza's mortgage. Also attached to the mortgage is a full copy of the personal guaranty from each of the husbands to each of the wives, guaranteeing payment of all of the obligations of Fidanza Brothers to Marie Fidanza and Jo Fidanza. The Mortgages recite that they are given "to secure payment of all amounts due under the guaranty of [$100,000 or $95,000] with interest payable as provided in a certain promissory note dated. . ." With this language and the full promissory note and the full guaranty attached, the nature of the debt secured by each mortgage is clear: it is the guaranty by Julio and August of the specific promissory notes due Jo and Marie Fidanza from Fidanza Brothers, copies of which are attached to the Mortgages. The fact that the personal guaranties are so-called "blanket" guaranties, guaranteeing all payments of any type due from Fidanza Brothers to Jo and Marie Fidanza does not require a finding that the Mortgages do not give reasonable notice of the obligation secured. Clearly, the Mortgages were given to secure the husbands' guarantee of specific Fidanza Brother promissory notes to the plaintiff wives, and both the guarantees and the notes were attached to the Mortgages and recorded in the land records.
In one of its post-trial memoranda of law, TDB sets forth CT Page 6334 twelve respects in which it contends the Mortgages fail to give reasonable notice of the obligation secured. TDB's claims must be limited, however, to its allegations as set forth in the tenth special defense. Cellu Tissue Corp v. Blake Equipment Co.,41 Conn. App. 413, 417 (1996). None of the twelve particular specifications is alleged in the special defense (and, as noted earlier, the one particular which was alleged was not briefed.) None of these particulars is properly before the court because none is alleged in the special defense. Moreover, if these claims were properly before the court, they would be found to be without merit. There is an erroneous date in the guaranties, but it is irrelevant because the guaranties are blanket guaranties of payment of all Fidanza Brother obligations whenever they arose; the execution date is therefore not critical. None of the remaining particulars is supported by citation to Connecticut or other case law. The Mortgages accurately set forth the amount of the debts at the time the Mortgages were executed, which is sufficient for reasonable notice. Id. The court finds for the plaintiffs on the tenth special defense.
The parties are also at issue as to the amount of the debts secured by the Mortgages and that issue too was tried to the court. The court finds that the principal balance due on the mortgage to Jo Fidanza is $93,870, which is $95,000 less $1,120, which was paid as attorneys' fees in connection with the home equity line of credit and therefore was not advanced to Fidanza Brothers. The court finds that the principal balance due on the mortgage to Marie Fidanza is $98,880, which is $100,000 less $1,120 for attorneys' fees. The court acknowledges that $25,050 was advanced on the line of credit and used to repay to Heritage Bank a personal loan to August Fidanza. However, that personal loan in the amount of $25,050 was also advanced as a loan to Fidanza Brothers and Fidanza Brothers now owes that money to Marie Fidanza whose home is at risk if the loan is not repaid. No further credits against principal are proper. The court rejects TDB's claim that the principal should be further reduced by the value of certain real estate transferred by Julio and August Fidanza to their wives some months after the Mortgages were recorded. A claim for such a reduction was not made in TDB's pleadings and no evidence of the fair market value of the equity in such properties was offered at trial so the court does not have the information necessary to give such a credit if it were warranted. Furthermore, TDB became the owner of the equity of at least one of these properties, 1750 Highland Avenue, by deed from the plaintiffs in order to settle DiBlasi's claim that these CT Page 6335 transfers also were fraudulent conveyances. Therefore the plaintiffs did not retain ownership of the Properties and a credit would not be appropriate.
The plaintiffs submitted interest calculations at trial based on the original principal amounts of both Mortgages. The plaintiffs are now directed to calculate the amount of interest claimed on the reduced principal balance of both notes as found by the court in this memorandum of decision. The plaintiffs are further directed to credit against those interest calculations all payments made by Fidanza Brothers to the plaintiffs since the dates of the promissory notes to the plaintiffs. These calculations should then be shown to counsel for TDB. The court hopes counsel for both sides can then stipulate to the amount of interest due and owing on both the Mortgages. If counsel are unable to agree, the court will hold a supplemental hearing limited to the calculation of interest due on the plaintiffs' notes.
The court has found for the plaintiffs on both special defenses. The plaintiffs should proceed to judgment by filing a motion for judgment of foreclosure, which should be heard on the regular foreclosure short calendar.
VERTEFEUILLE, J.